Howard Elisofon, Esq.
Christopher J. Sullivan, Esq.
John Oleske, Esq.
Kerry K. Jardine, Esq.
Attorneys for Plaintiffs
Herrick, Feinstein LLP
2 Park Avenue
New York, New York 10016
Tel: (212) 592-1400
Email: helisofon@herrick.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PHYLLIS MOLCHATSKY and STEVEN      :      Case No 09 CIV 8697 (LTS/AJP)
SCHNEIDER, M.D.,                   :
                                   :
                  Plaintiffs,      :
                                   :
            vs.                    :
                                   :
UNITED STATES OF AMERICA,          :
                                   :
                  Defendant.       :
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

ISSUES OF MATERIAL FACT ...............................................................................4

STANDARD OF REVIEW ........................................................................................9

ARGUMENT .............................................................................................................10

I.     The Government Bears the Burden of Proving that the Discretionary-Function Exception Applies...................................................................................................12

II.    The Government Has Failed to Meet its Burden. .............................................16

     A.    The Government Has Failed to Prove That the SEC's Conduct Did Not Violate Mandatory Duties.............................................................................17

          1.    There Is No Blanket Immunity for the SEC's Failure to Warn of Dangers Revealed in the Course of its Investigations. ...............18

          2.    The SEC Violated the Securities Exchange Act of 1934...........26

          3.    The SEC Violated its Own Mandatory Internal Policies. ..........27

          4.    The SEC's Conduct Likely Violated Other, Undiscovered Policies. ........28

          5.    The SEC's Conduct Was Outside any "Permissible Range of Conduct." ..............................................................................30

          6.    The Government has Failed to Meet its Burden of Proof on the First Prong of the *Berkovitz* Test, and Its Motion to Dismiss Must Therefore Be Denied.............................................................31

     B.    The Government Has Failed to Prove that the SEC's Negligent Acts and Omissions Were Susceptible to Policy Considerations. ........................32

          1.    The SEC's Decisions Based on Laziness or Inattentiveness are not Susceptible to Policy Analysis.................................................32

          2.    The Theoretical Involvement of Time and Resource Constraints Does Not Render All Investigative Decisions Susceptible to Policy Analysis..................................................................................34

          3.    The Government's Failure to Satisfy the Second Prong of the *Berkovitz* Test Independently Requires Denial of the Government's Motion........................................................................................36

III.    If Disputed Facts Prevent the Court From Determining Whether it Has Subject-
        Matter Jurisdiction, It Must Still Deny the Government's Motion Pending
        Discovery and Trial..............................................................................................36

**CONCLUSION** ......................................................................................................................37

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Adams v. United States*, 622 F. Supp. 2d 996 (D. Idaho 2009) ..........................................13

*Aragon v. United States*, 146 F.3d 819 (10th Cir. 1998) ...................................................14

*Ashford v. United States*, 511 F.3d 501 (5th Cir. 2007)......................................................13

*Bd. of Trade of Chicago v. SEC*, 883 F.2d 525 (7th Cir. 1989)........................................18

*Bell v. Hood*, 327 U.S. 678 (1946).......................................................................................9

*Berkovitz v. United States*, 486 U.S. 531 (1988) .......................................................9, 16, 17

*Boyd v. United States*, 881 F.2d 895 (10th Cir. 1989)........................................................23

*Bradley v. United States*, 615 F. Supp. 206 (E.D. Pa. 1985),
    *aff'd sub nom. Pooler v. United States*, 787 F.2d 868 (3d Cir. 1986).........................22

*Brown v. United States*, 1994 U.S. Dist. LEXIS 8793 (W.D.N.Y. June 8, 1994) .........9, 13

*Careau Group v. United Farm Workers*, 940 F.2d 1291 (9th Cir. 1991)............................9

*Carlyle v. United States*, 674 F.2d 554 (6th Cir. 1982) .....................................................13

*Cazales v. Lecon, Inc*, 994 F. Supp. 765 (S.D. Tex. 1997).................................................13

*Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001) .......................................................18

*Cope v. Scott*, 45 F.3d 445 (D.C. Cir. 1995).....................................................................23

*Coulthurst v. United States*, 214 F.3d 106 (2d Cir. 2000) .................................................32

*Day Vill. L.P. v. CW Capital L.L.C*,
    2006 U.S. Dist. LEXIS 63715 (S.D.N.Y. Sept. 6, 2006)...............................................8

*Downs v. United States*, 522 F.2d 990 (6th Cir. 1975)................................................27, 33

*Duke v. Dep't of Agric.*, 131 F.3d 1407 (10th Cir. 1997)...........................................16, 23

*Estate of Gonzales v. Hickman*, 2007 U.S. Dist. LEXIS 84050
    (C.D. Cal. May 30, 2007) ..............................................................................................4

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)............................................................24

*Fazi v. United States*, 935 F.2d 535 (2d Cir. 1991) ...........................................................29

*FDIC v. Meyer*, 510 U.S. 471 (1994) ..................................................................................12

*First State Bank v. United States*, 599 F.2d 558 (3d Cir. 1979) .......................................24

*Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995)..............................22

*Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ............................22

*Gen. Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998) ...........................22

*Gotha v. United States*, 115 F.3d 176 (3d Cir. 1997) ........................................................10

*Gottlieb v. United States*, 2007 U.S. Dist. LEXIS 27358
   (S.D. Ind. April 4, 2007) .................................................................................................28

*Gray v. Bell*, 712 F.2d 490 (D.C. Cir. 1983).......................................................................21

*Hobdy v. United States*, 762 F. Supp. 1459 (D. Kan. 1991)...............................................22

*Ignatiev v. United States,.*, 238 F.3d 464 (D.C. Cir. 2001)............................................8, 28

*Indian Towing v. United States*, 350 U.S. 61 (1955) ..........................................................30

*Ingham v. E. Air Lines, Inc.*, 373 F.2d 227 (2d Cir. 1967) ...........................................26, 30

*In re Katrina Canal Breaches Con. Litig.*, 647 F. Supp. 2d 644
   (E.D. La. 2009) ...............................................................................................................34

*Kelly v. United States*, 924 F.2d 355 (1st Cir. 1991) ..........................................................15

*Kielwien v. United States*, 540 F.2d 676 (4th Cir. 1976) ....................................................16

*Laurence v. United States*, 1993 U.S. Dist. LEXIS 21404
   (N.D. Cal. July 8, 1993) ............................................................................................32, 36

*Le v. SEC*, 542 F. Supp. 2d, 1318 (N.D. Ga. 2008) .......................................................18, 20

*Levy v. United States*, 1992 U.S. App. LEXIS 2501 (9th Cir. Feb.12, 1992).............18, 19

*Leytman v. NYSE*, No. 95 CV 902, 1995 WL. 761843
   (E.D.N.Y. Dec. 6 1995) ............................................................................................18, 20

*Loughlin v. United States*, 286 F. Supp. 2d 1 (D. D.C. 2003) ............................................28

*Marlys Bear Medicine v. United States*, 241 F.3d 1208 (9th Cir. 2001) ..........................13

*Merando v. United States*, 517 F.3d 160 (3d Cir. 2008)......................................................13

*Mesa v. United States*, 123 F.3d 1435 (11th Cir. 1997).......................................................34

*Miles v. Naval Aviation Museum Found., Inc.*, 289 F.3d 715 (11th Cir. 2002)................26

*Milligan v. United States*, 2009 U.S. Dist. LEXIS 80846
    (M.D. Tenn. Sept. 4, 2009) ...............................................................................15, 34

*O'Toole v. United States*, 295 F.3d 1029 (9th Cir. 2002) ..................................................16

*Ochran v. U.S.*, 117 F.3d 495 (11th Cir. 1997)....................................................................13

*Peck v. United States*, 470 F. Supp. 1003 (1979) ...............................................................24

*Pooler v. United States*, 787 F.2d 868 (3d Cir. 1986) ........................................................25

*Prescott v. United States*, 973 F.2d 696 (9th Cir. 1992)............................13, 14, 16, 23, 32

*Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187
    (D.C. Cir. 1986) .......................................................................................................27

*Red Lake Band of Chippewa Indians v. United States*, 936 F.2d 1320
    (D.C. Cir. 1991) .......................................................................................................33

*Redmond v. United States*, 518 F.2d 811 (7th Cir. 1975) ..................................................24

*Roberts v. United States*, 724 F. Supp. 778 (D. Nev. 1989),
    *aff'd*, 85 F.3d 637 (9th Cir. 1996) .........................................................................27

*Rourke v. United States*, 744 F. Supp. 100 (E.D. Pa. 1988) .............................................22

*SEC v. Better Life Club of Am.*, 995 F. Supp. 167 (D.D.C. 1998)...............................18, 20

*Sabow v. United States*, 93 F.3d 1445 (9th Cir. 1996).................................................22, 35

*Scrima v. Hasty*, 1998 U.S. Dist. LEXIS 15050 (S.D.N.Y. Sept. 23, 1998) ....................26

*Sexton v. United States*, 132 F. Supp. 2d 967 (M.D.Fla. 2000) ........................................13

*Singh v. S. Asian Soc'y of the George Wash. Univ.*,
    2007 U.S. Dist. LEXIS 37718 (D. D.C. May 24, 2007)..............................................28

*Sloan v. HUD*, 236 F.3d 756 (D.C. Cir. 2001) ........................................................20, 35

*Smith v. United States*, 546 F.2d 872 (10th Cir. 1976) ...............................................23

*Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983)......................................................18

*Standifer v. SEC*, 542 F. Supp. 2d 1312 (N.D.Ga. 2008) ......................................18, 19, 20

*Stewart v. U.S.*, 199 F.2d 517 (7th Cir. 1952)......................................................13, 14, 15

*Tabor v. Bodisen Biotech, Inc.*, 581 F. Supp. 2d 552 (S.D.N.Y. 2008)..........................9

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) .................................32

*United States v. Gaubert*, 499 U.S. 315 (1991) ......................................................10

*Usher v. Los Angeles*, 828 F.2d 556 (9th Cir. 1987) .................................................9

*Valdez v. United States,*, 2009 U.S. Dist. LEXIS 66823
  (S.D.N.Y. July 31, 2009) ......................................................15, 22, 34, 35

*Wang v. United States*, 61 Fed. Appx. 757 (2d Cir. April 2, 2003)..............................22

*Welch v. United States*, 409 F.3d 646 (4th Cir. 2005) ...............................................14

*Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005) .........................................34

*Woods v. United States,*, 2007 U.S. Dist. LEXIS 80931
  (D.N.J. Nov. 1, 2007).......................................................15, 22, 35

*Yates v. United States*, 497 F.2d 878 (10th Cir. 1974)................................................30

**FEDERAL STATUTES**

9th Cir. R. 36-3(a).........................................................................................18

15 U.S.C. § 78u(a)(1).............................................................................22, 29, 30

15 U.S.C.S. § 78q(k)........................................................................................26

28 U.S.C. § 1346................................................................................................1

28 U.S.C. § 2680(h).........................................................................................19

FRCP 12(b)(1) ............................................................8

Fed. R. Evid. 803(8)......................................................4

## OTHER AUTHORITIES

14 Wright & Miller Federal Practice and Procedure Jurisdiction 3d,
  § 3658.1 (1998)......................................................13

Procedure Jurisdiction 3d. § 3658.1 (1998) .....................................14

## PRELIMINARY STATEMENT

The Securities and Exchange Commission ("SEC") decided to investigate Bernard Madoff's multi-billion dollar Ponzi scheme at least six times over two decades. The SEC unquestionably had discretion as to whether or not to initiate those investigations, and would be immune to any claim that it should have—or should not have—investigated Madoff on those or other occasions. Once the SEC undertook those investigations, however, it had an obligation to obey the law and its own internal policies,[1] and to competently perform routine investigative tasks unrelated to policy considerations. Here, by its own admission, the SEC fell spectacularly short in all respects, resulting in its failure to expose the lurking danger Madoff represented— and the consequent total loss of Plaintiffs' investments.

Although the Government has admitted its negligence, it seeks to evade responsibility by undercutting the Federal Tort Claims Act, 28 U.S.C. 1346, *et seq.* ("FTCA"). Through the FTCA, Congress sharply restricted the Government's sovereign immunity from negligence claims, intending to rectify the injustice of barring victims like Plaintiffs from recovery because they were harmed by the government, rather than private parties. Here, the Government's lawyers seek to reduce Congress's deliberate waiver of immunity to an empty promise, arguing that everything the SEC did during its investigations was discretionary. But the two-part test set out by the Supreme Court in *Berkovitz v. United States* for the discretionary-function exception to the FTCA does not apply to the SEC's unauthorized, non-policy-related conduct in this case, and the Government's motion to dismiss must therefore be denied.

---

[1] Throughout this brief, Plaintiffs' references to the SEC's internal "policies" refers to any policy, practice, or procedure, whether written or not, whether formal or informal, that imposed a mandatory duty on SEC staffers to act or refrain from acting in a particular manner.

To establish that its claims fall outside the discretionary-function exception, Plaintiffs rely on the admissible evidence contained in the Report of the SEC's own Office of Inspector General, dated August 31, 2009 (the "Report"). The Report is a scathing indictment of the SEC's conduct, and repeatedly admits the agency's violation of applicable statutes and the SEC's own internal policies. It also describes acts and omissions that were likely prohibited by policies Plaintiffs have not yet discovered, or else were barred as a matter of practice regardless of the existence of written policies. The unauthorized nature of this conduct disqualifies it from immunity under the first prong of the *Berkovitz* test. Moreover, the Report acknowledges that the decisions made by SEC staffers were not connected to any competing policy interests, but were rather the product of simple laziness, indifference, and incompetence. This would preclude immunity under the second *Berkovitz* factor, even if the Government had satisfied the first. Moreover, the Government admits in the Report that but for these negligent acts and omissions, Madoff's scheme "would have been uncovered," and Plaintiffs' losses would have been avoided.

The Government bore the burden of overcoming, with admissible evidence, the Report's proof of actionable conduct that was non-discretionary under both prongs of the *Berkovitz* test, and that resulted in Plaintiffs' injuries. But the Government has produced no evidence at all. Instead, the Government first disclaims its burden, and then argues that all acts and omissions that take place during a regulatory investigation are subject to a grant of blanket immunity, eliminating the need for the Government to engage in the fact-intensive *Berkovitz* analysis at all. Both of these arguments are wrong.

The majority of the federal courts that have considered the issue—including one court in this Circuit—agree that the government bears the burden of proof under the *Berkovitz* test. The majority's decisions properly equate the FTCA exceptions to affirmative defenses, and recognize

the inherent absurdity and unfairness of requiring plaintiffs to disprove the applicability of thirteen separate exceptions in their pleadings to avoid dismissal on a pre-answer motion. Although the question has not yet been addressed in this district or by the Second Circuit, the Court should follow the well-reasoned majority rule, and require the Government to prove that the discretionary-function exception somehow applies to the SEC's admittedly unauthorized and non-policy-related conduct.

The Government's claim of blanket immunity for all regulatory-investigative acts also fails. Though its entire motion hangs on this argument, the Government cannot cite a single authority establishing a rule of blanket immunity for negligence in the course of SEC investigations. Indeed, the distinctions between the Government's cases and the circumstances here actually demonstrate that there is no right to automatic immunity. Those courts only applied the discretionary-function exception where damages flowed from a discretionary prosecutorial choice, and where the negligence that occurred during an investigation was found to be completely intertwined with that prosecutorial choice. Moreover, those cases either did not involve allegations that an agency violated mandatory requirements, or else rejected those allegations after fact-intensive scrutiny. Indeed, while none of those cases establishes the rule of blanket immunity advocated by the Government, at least some of them explicitly state that negligence in the course of a regulatory investigation *could* give rise to liability where that negligence was not connected to a prosecutorial decision and involved the violation of mandatory procedures. Here, Plaintiffs can prove both that the SEC's negligence violated mandatory procedures, and by the SEC's own admission, that the scheme "would have been uncovered," and Plaintiffs' losses would have been avoided, if those procedures had been followed.

Even if the Government had submitted admissible evidence to meet its burden, however, it would still be premature for the Court to dismiss the Complaint. First, Plaintiffs have a right to discovery of the SEC's internal policies and practices, which the agency has so far refused to provide through Freedom of Information Act ("FOIA") requests. Second, given the proof represented by the Report, any evidence from the Government could, at most, create disputed issues of fact relating to jurisdiction that are intertwined with the underlying merits of Plaintiff's negligence claims. As a result, the Court would still have to assume jurisdiction and deny the Government's motion pending discovery and trial.

The discretionary-function exception is not a "get out of jail free card" to be accepted at face value. Rather, immunity must be earned by the Government in each case, with proof sufficient to eliminate all disputed issues of material fact as to its agents' authority and the policy-based nature of their decisions. The Government's failure to do so here requires the Court to find that it has jurisdiction over Plaintiffs' claims, and to deny the Government's motion outright.

## ISSUES OF MATERIAL FACT

The SEC's admitted gross negligence in handling its multiple investigations of the Madoff Ponzi scheme, and the trail of wrecked lives it has left in its wake, are set forth extensively in the Complaint and evidenced by the Report,[2] and are not repeated here at length. However, it is essential to clarify that Plaintiffs do not allege that the SEC was negligent in failing to prosecute or enjoin Madoff, or in making decisions as to whether and when to

---

[2] Where the Government is a defendant, "factual findings resulting from an investigation made pursuant to authority granted by law" constitute admissible evidence "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(c). As a result, the Report, which is supported by thousands of pages of SEC records and sworn testimony, is admissible here. *See Estate of Gonzales v. Hickman*, No. 05-660, 2007 U.S. Dist. LEXIS 84050 (C.D. Cal. May 30, 2007) (report of the California State Inspector General admissible under Rule 803(8)(c)).

investigate him. Instead, Plaintiffs allege that once the SEC undertook each of its numerous investigations, it then acted negligently in ways that were: (i) prohibited by statute or mandatory procedures; and (ii) unconnected to policy considerations. As such, it is important to specifically identify the allegations of the Complaint relating to the SEC's violation of mandatory procedures, and to the absence of any policy considerations in the SEC's negligent everyday decision making.

First, the SEC has admittedly violated the Securities Exchange Act of 1934 (the "1934 Act") by repeatedly failing to communicate internally and with self-regulatory agencies. This includes the failure of the various SEC teams to advise each other of the status of their Madoff investigations (Complaint ¶¶ 68, 69, 84, 92, 109, 111, 129, 134), their failure to seek or provide expert guidance from other SEC departments when needed (Complaint ¶¶ 40, 134, 136, 137), and their failure to contact the NASD or CBOE to obtain critical information. (Complaint ¶¶ 75, 76, 80). These failures to comply with the statute's directive to communicate and coordinate, which was intended to ensure a minimum level of efficiency and effectiveness, facilitated Madoff's efforts to remain undetected and perpetuate the scheme.

Second, the SEC admittedly violated its own internal policies by failing to obey rules regarding the filing of reports and the use of the SEC's STARS computer system. Specifically, this conduct included the SEC investigative teams' failure to file case opening reports when it initiated investigations (Complaint ¶¶ 86, 109), and case closing reports when the investigations were ended. (Complaint ¶ 84). It also included the teams' failure to submit Matter Under Inquiry ("MUI") reports with respect to its open investigations (Complaint ¶¶ 130, 131), and their failure to consult the STARS computer system that manages SEC investigations upon opening and

closing investigations. (Complaint ¶¶ 86, 109). These failures, like the failures to obey the 1934 Act, enabled Madoff's fraud by preventing the various SEC teams from marshaling all of the key information for each of their investigations.

Third, the SEC admittedly acted or failed to act in ways that likely violated formal SEC policies. For instance, the SEC repeatedly failed to request materials from third parties to substantiate Madoff's claimed trading activity. (Complaint ¶¶ 37, 38, 39, 73, 80, 83, 107, 147). It also assigned SEC staffers who had no understanding of securities transactions, and were otherwise unqualified, to the Madoff investigations. (Complaint ¶¶ 35, 40, 49, 67, 69, 70, 71, 73, 94, 95, 106, 124, 132, 138, 140). Those staffers also acted out of personal animus (Complaint ¶¶ 125, 127, 128), unfounded fear of individual liability (Complaint ¶¶ 103, 104), and improper deference to Madoff on account of his reputation. (Complaint ¶¶ 35, 105). Although the SEC has refused to identify its formal investigative policies (despite repeated requests), these activities must be inconsistent with such policies.

Finally, there are other allegations of admittedly negligent conduct that may or may not have violated any written policies, but which were nevertheless outside any "permissible range of conduct" and were prohibited as a matter of practice within the SEC. This would include the SEC's routine failure to contact third parties to seek proof of Madoff's trading (Complaint ¶¶ 38, 76-78, 81, 100, 102, 107, 133, 134, 142, 144-146,149) and its failure to obtain the relevant information in the few cases where it did actually make such contact. (Complaint ¶¶ 144, 146). It could also include the SEC staffers' pattern of disregarding their own conclusions that Madoff had lied to them in the course of their investigations. (Complaint ¶¶ 66, 77, 78, 91, 97, 99, 103, 133, 159).

Plaintiffs further allege that none of these acts or omissions, whether or not subject to any mandatory requirements or prohibitions, were grounded in any legitimate policy considerations, but rather, each was the product of the SEC staffers' simple laziness, indifference and incompetence. For example, Plaintiffs identify instances in which staffers failed to request information from third parties because they did not want to deal with the task of analyzing the documents they would be given (Complaint ¶¶ 75, 76, 82, 83), or where they did not seek assistance from SEC teams with relevant expertise because they found dealing with those teams to be annoying. (Complaint ¶¶ 68, 69).

Finally, Plaintiffs allege, and the Report concedes, that the SEC's negligent conduct during its investigations, and its consequent failure to warn the public of the danger Madoff posed to investors, was the direct cause of Plaintiffs' injuries. (Complaint ¶¶ 2, 166, 172). In fact, the SEC even admits in the Report that Madoff successfully used the SEC's (failed) investigations as proof of his *bona fides* to existing and prospective investors, and further admits that were it not for the SEC's wrongdoing, Madoff's scheme "would have been uncovered" and Plaintiffs would never have been victimized. (Complaint ¶¶ 2, 13, 85, 101, 107, 111, 143, 144).

Plaintiffs' allegations of specific SEC policy violations, as well as the absence of any legitimate policy considerations in the SEC's decision making, are based wholly on the Government's admissions in the Report. While the Report is a remarkable confession of governmental wrongdoing, complete with deposition transcripts and documentary evidence, it was not focused on the elements of Plaintiffs' claims here, or specifically, on rooting out which specific mandatory policies the SEC violated in the course of its grossly negligent investigations. Plaintiffs have attempted, through the Freedom of Information Act, to obtain additional evidence relating to policies not specifically mentioned in the Report, such as manuals or guidelines that

might prescribe specific courses of action with respect to Plaintiffs' allegations (Declaration of Howard Elisofon, dated February 26, 2010 ("Elisofon Decl."), at . ¶ 2; Exh.A), but these efforts have been repeatedly thwarted.

The SEC objected to Plaintiffs' request on the grounds of burdensomeness and the law-enforcement privilege, and directed Plaintiffs to the SEC's website, which contains none of the kinds of internal policies Plaintiffs seek. (Elisofon Decl. ¶ 3; Exh. B).  Plaintiffs appealed the SEC's response with a sound and detailed legal argument demonstrating the SEC's obligation to produce the requested documents, but they did not even receive a reply.  *Id.* at. ¶ 4; Exh. C.  After further inquiry, the SEC claimed not to have received Plaintiffs' appeal.  *Id.* at.. ¶ 5; Exh. D.  Plaintiffs re-sent the appeal, but again, Plaintiffs have no record of the SEC ever responding.  *Id.* at. ¶ 6; Exh. E.

The SEC is obviously unwilling to produce any of the materials needed to establish the extent of the SEC's mandatory internal policies.  Plaintiffs are entitled to discovery to ensure that the SEC's stonewalling does not succeed in sabotaging Plaintiffs' claims before a full record can be developed.  *Ignatiev v. United States*,. 238 F.3d 464, 467 (D.C. Cir. 2001) (discovery required where plaintiff alleged "reason to believe" mandatory guidelines existed, "because those rules are the supposed internal guidelines [of the agency], [and so] only discovery can reveal them").

The Government, for its part, provides no proof contradicting any of Plaintiffs' extensive allegations regarding the violation of mandatory directives or the absence of policy considerations underlying the SEC's negligent decisions.  Instead, the Government simply denies that there were mandatory policies relating to the conduct at issue.  (Moving Br. p. 11).  In addition to running afoul of common sense, this denial by the Government's lawyers is not admissible evidence, and cannot be considered by the Court on this motion.  Moreover, having

failed to submit even a shred of evidence with its moving papers, the Government is barred from remedying this failure with any further submissions on reply. *See Day Vill. L.P. v. CW Capital L.L.C*, No. 06 Civ. 3424, 2006 U.S. Dist. LEXIS 63715, *8 (S.D.N.Y. Sept. 6, 2006).

## STANDARD OF REVIEW

On this motion to dismiss pursuant to FRCP 12(b)(1), the Court must decide whether jurisdiction has been established by a preponderance of the evidence. The Court may consider matters outside the pleadings, including affidavits and other evidence submitted by the parties, and it may order discovery and conduct evidentiary hearings to assist in making its determination. *See Tabor v. Bodisen Biotech, Inc.,* 581 F. Supp. 2d 552 (S.D.N.Y. 2008). As explained in Point I, below, the Government bears the burden of proving that the discretionary-function exception applies under the *Berkovitz* test, and so to prevail here, the Government must counter the facts identified above with a preponderance of contrary admissible evidence.

Moreover, where the facts relating to jurisdiction on a Rule 12(b)(1) motion are intertwined with the facts relevant to the underlying merits, the Court should properly convert the motion to one for summary judgment. *Brown v. United States,* 1994 U.S. Dist. LEXIS 8793, *11-12 (W.D.N.Y. June 8, 1994). The Court should accept the pleadings as true and draw all reasonable inferences in favor of plaintiffs for purposes of this motion. *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

If the Government's evidence fails to eliminate all disputed facts as to jurisdiction, the Court should deny the motion and assume jurisdiction until it can be finally resolved following discovery and a trial. *Bell v. Hood*, 327 U.S. 678 (1946); *Brown*, U.S. Dist. LEXIS 8793, at *12 (where facts are intertwined, courts "[should] refrain from making factual findings [relating to

jurisdiction] without the benefit of having such matters presented at trial"); *Careau Group v. United Farm Workers*, 940 F.2d 1291 (9th Cir. 1991) (same).

## ARGUMENT

Under the rigorous, fact-intensive test for the application of the discretionary-function exception set out by the Supreme Court in *Berkovitz v. United States*, 486 U.S. 531 (1988) and its progeny, the Government is required to eliminate, with a preponderance of the evidence, any disputed facts as to two questions:

> 1. ***Whether a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow.*** If so, the employee has no rightful option but to adhere to the directive. Consequently, there can be no lawful discretionary act.
>
> 2. If circumstances imposing compulsion do not exist...***whether the challenged action or inaction is of the kind that the discretionary function exception was designed to shield.***...the discretionary function exception insulates the Government from liability ***if the action . . . involves the permissible exercise of policy judgment***.

*Gotha v. United States*, 115 F.3d 176 (3d Cir. 1997) (quoting *Berkovitz*) (quotations omitted) (emphasis added). The second prong of the *Berkovitz* test was further refined in *United States v. Gaubert*, 499 U.S. 315, 325 (1991), with the Supreme Court explaining that this aspect of the test is only met where an agency's actions "can be said to be grounded in the policy of the regulatory regime . . . [and] susceptible to policy analysis."

"The FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002) (*citing, Kielwien v. United States*, 540 F.2d 676, 681 (4th Cir. 1976), *cert denied*, 429 U.S. 979 (1976) ("The [FTCA] is remedial and should be liberally construed to grant the relief contemplated by

Congress.")). As such, any uncertainty as to the applicability of the discretionary-function exception should be resolved in Plaintiffs' favor.

The Government argues, as a threshold matter, that Plaintiffs, not the Government, bear the burden of proof in the *Berkovitz* analysis. This is simply wrong. Although it is an issue of first impression in this district, a wide majority of the Courts of Appeal, as well as the Western District of New York, have found that the burden properly lies with the Government. The Government has failed to meet that burden.

The Government then attempts to sidestep the *Berkovitz* analysis entirely by asserting blanket immunity for all of the SEC's investigative acts. But this argument has no support in the authorities the Government cites. The claims in those cases, including those involving the SEC, all relied on second-guessing the ultimate exercise of prosecutorial discretion, not on independent investigative negligence that resulted in a failure to warn victims. Moreover, in those cases, where the plaintiffs actually alleged the violation of mandatory policies, courts engaged in a fact-intensive application of the first prong of the *Berkovitz* test—they did not simply disregard the alleged prohibited conduct just because it occurred during an investigation.

The Government has cited no authority, and we have found none, in which an agency like the SEC was given a blank check to injure innocent third parties with negligent acts and omissions in the course of its investigations. If anything, the Government's blanket-immunity argument is self-defeating, in that the authorities it relies on actually show that courts never simply assume that investigative acts are immune. Instead, they engage in a specific analysis of any connection between those acts and a prosecutorial decision, and the investigators' actual authority to engage in those acts under the first prong of the *Berkovitz* test.

Stripped of its blanket-immunity argument, the Government cannot survive the *Berkovitz* analysis. With respect to the first part of the test, the Government has not introduced any evidence to show that the statutes and mandatory policies identified by Plaintiffs were somehow actually discretionary. It has not submitted proof that the SEC has no additional, undiscovered policies that prohibited the conduct alleged by Plaintiffs. And it has not submitted proof that the SEC staffers' conduct was within a permissible range of conduct notwithstanding the absence of written policies. As to the second part of the test, the Government has not provided any testimony identifying any competing policy considerations that were at issue in the SEC's negligent everyday decisionmaking driven by laziness and inattentiveness. Instead it relies on a general reference to resource-allocation considerations—a "catch all" that has been explicitly held to be insufficient to satisfy the second prong of the *Berkovitz* test.

Because the Government has failed to submit any evidence at all to contradict Plaintiffs' proof relevant to the *Berkovitz* analysis, the Court should find that subject-matter jurisdiction has been established by a preponderance of the evidence, and deny the Government's motion outright. However, even if the Court determined that the current state of the pleadings and proof precludes a final determination that the discretionary-function exception does not apply, the existence of disputed facts would still require the Court to assume jurisdiction, and deny the motion pending discovery and trial.

## I. THE GOVERNMENT BEARS THE BURDEN OF PROVING THAT THE DISCRETIONARY-FUNCTION EXCEPTION APPLIES

As a matter of first impression in this district, the Court should find that the Government bears the ultimate burden of proof on this motion, and cannot prevail unless it proves, with a preponderance of admissible evidence, that the discretionary-function exception applies. This conclusion is supported by the wide majority of the Courts of Appeal that have addressed the

issue, and by the Western District of New York. Those decisions highlight the inherent unfairness of forcing plaintiffs to "prove a negative"—that the FTCA's exceptions do not apply—before allowing their claims to proceed. The Government, though, does not even acknowledge the majority decisions, or even that the question is the subject of a circuit split for this Court to resolve. Instead, the Government simply asserts that Plaintiff bears the burden of proof based on a single, inapposite case that did not involve the FTCA at all, let alone the discretionary-function exception.[3]

In FTCA cases where the discretionary-function exception is at issue, courts apply a two-step analysis in allocating the burden of proof, asking: (1) whether the plaintiff has pleaded a claim that is not facially within the discretionary-function exception; and (2) if so, whether the discretionary-function exception analysis under the *Berkovitz* test nevertheless bars the claim, and thus deprives the Court of subject-matter jurisdiction. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992). Plaintiffs do not dispute that they have the burden of proof on the first part of this test, requiring them to allege that the SEC violated mandatory procedures or made decisions unconnected to policy considerations. *See Prescott*, 973 F.2d at 702. As set forth above, and fully explained below, Plaintiffs have met that burden.

However, the Government has the ultimate burden of proving that the exception applies, according to a strong majority of the divided Courts of Appeal, including the Third, Fifth, Sixth, Seventh, Ninth and Eleventh Circuits.[4] The Western District of New York, among other district courts, has also adopted this rule. *Brown v. United States*, 1994 U.S. Dist. LEXIS 8793, at *21-

---

[3] It is true, as the Government suggests, that generally a plaintiff must demonstrate that the Court has jurisdiction. *See* Moving Br. at p.5, *citing FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994). That case, however, does not address the specific issues raised by the discretionary-function exception, and lacks the more nuanced analysis required here.
[4] *See Merando v. United States*, 517 F.3d 160 (3d Cir. 2008); *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007); *Carlyle v. United States*, 674 F.2d 554 (6th Cir. 1982); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir.

23 (government required to prove applicability of the exception with evidence in record showing that supervision of contractors was within discretion of postal officials).[5]

The Ninth Circuit explained that a contrary rule would ignore the real character of FTCA exceptions as defenses, and would lead to absurd results:

> Because an exception to the FTCA's general waiver of immunity, although jurisdictional on its face, is analogous to an affirmative defense…placing the burden on the plaintiff would "impose upon the plaintiff the burden of proving [thirteen] negative averments. *Such a result would border on the preposterous.*"

*Prescott*, 973 F.2d at 702 (*quoting Stewart*, 199 F.2d at 520) (emphasis added).

The Fourth and Tenth Circuits have split from the majority, requiring the Plaintiff to disprove the applicability of the exception. Those courts determined that because the discretionary-function exception is analyzed as part of a jurisdictional question, the burden must automatically fall on the plaintiff to establish the court's ability to hear the case. *See Welch v. United States*, 409 F.3d 646 (4th Cir. 2005), *cert denied*, 546 U.S. 1214 (2006); *Aragon v. United States*, 146 F.3d 819 (10th Cir. 1998).

However, as the Seventh Circuit explained in *Stewart*, the discretionary-function exception does <u>not</u> pose a jurisdictional question in the conventional sense, in that it renders the court powerless to adjudicate a given case. Rather, "Sec. 1346(b) conferred general jurisdiction of the subject matter of claims coming within its purview, *and the exceptions referred to are available to the government as a defense only when aptly pleaded and proven.*" 199 F.2d at 519 (emphasis added).

---

1952); *Marlys Bear Med. v. United States*, 241 F.3d 1208, 1213 (9th Cir. 2001) (*citing Prescott*, 973 F.2d at 702); *Ochran v. United States*, 117 F.3d 495 (11th Cir. 1997).
[5] *See also Adams v. United States*, 622 F. Supp.2d 996, 1000 (D.Idaho 2009); *Sexton v. United States*, 132 F. Supp.2d 967 (M.D.Fla. 2000); *Cazales v. Lecon, Inc*, 994 F. Supp. 765 (S.D. Tex. 1997); *see also* 14 Wright & Miller, Federal Practice and Procedure Jurisdiction 3d. § 3658.1 at 639 (1998) ("Most courts have concluded that the burden of proving the applicability of the discretionary-function exception falls upon the United States.").

This Court should join the Western District of New York and adopt the majority rule. As the majority has held, placing the burden on the Government properly treats the FTCA exceptions as the defenses they are. It avoids the unfair and impossible pleading standard that results if plaintiffs are required to preemptively disprove all of the FTCA exceptions before discovery. The minority view ignores this fundamental problem, and violates the principle that the exceptions must be narrowly construed. Accordingly, the Court should adopt the realistic and practical view of the majority, and require the Government to prove the applicability of the discretionary-function exception by a preponderance of the evidence.

Plaintiffs have met their threshold requirement of pleading negligent acts by the SEC that fall outside one or both of the categories set out in *Berkovitz*. They allege that the SEC's negligent acts and omissions were in contravention of statutes, regulations and written policies, and that those acts and omissions, even if not subject to a formal policy, were not within a permissible range of conduct for the SEC agents in question. On their face, those same acts and omissions had no grounding in policy considerations. The Government has admitted that if this negligence had not occurred, the fraud would have been exposed, and Plaintiffs would not have fallen victim to the scheme. This, along with allegations that Plaintiffs have exhausted their administrative remedies, is all that is required of Plaintiffs to shift the burden to the Government.

In order to meet its burden, the Government must offer evidence that proves that the discretionary-function exception applies to bar Plaintiffs' claims. *See Stewart*, 199 F.2d at 519. Usually, the evidence is comprised of affidavits attesting to the discretionary nature of the conduct at issue. *See, e.g., Kelly v. United States*, 924 F.2d 355 (1st Cir. 1991) (affidavits demonstrating that regulations that appeared mandatory were discretionary in practice); *Milligan v. United States*, No. 3-07-1053, 2009 U.S. Dist. LEXIS 80846 (M.D. Tenn. Sept. 4, 2009)

(affidavit describing agents' broad discretion); *Valdez v. United States,* No. 08 Civ. 4424, 2009 U.S. Dist. LEXIS 66823, *21 (S.D.N.Y. July 31, 2009) (declarations regarding policy considerations); *Woods v. United States,* No. 07-593, 2007 U.S. Dist. LEXIS 80931, 12 (D.N.J. Oct. 31, 2007), *aff'd,* 909 F2d 1477 (3d Cir. 1990) (same).

Conversely, where the Government does not submit proof to support its discretionary-function defense, it is inappropriate to dismiss a plaintiff's FTCA claim on the grounds of lack of jurisdiction. For example, in *Prescott,* Government's summary judgment motion was denied because the Government's evidence was insufficient to prove "that the specific acts of negligence flowed directly from the policy choices of on-site officials who had been explicitly entrusted with the responsibility of weighing competing policy considerations." 973 F.2d at 703.

The *Prescott* court further explained that "the Government must, at a minimum, *prove* that the challenged decision was susceptible to such balancing or that the Government employee was entrusted with the responsibility of conducting such balancing." *Id. (citing Berkovitz,* 486 U.S. at 536) (emphasis added); *see also Duke v. Dep't of Agric.,* 131 F.3d 1407, 1412 (10th Cir. 1997) (reversing lower court's dismissal of FTCA claim based on discretionary-function exception where "the record reveal[ed] no evidence by the government of any social or political justification" for negligent actions). As established in Point II below, the Government has submitted no evidence whatsoever to prove the applicability of the discretionary-function exception in this case.

## II.     THE GOVERNMENT HAS FAILED TO MEET ITS BURDEN.

The Government has failed to offer proof satisfying either prong of the *Berkovitz* test. Instead, the Government completely ignores Plaintiff's evidence, and relies on conclusory assertions and baseless, catch-all legal arguments that have no support in the cases the Government cites. Given the narrow construction of the discretionary-function exception, and

the Government's total abdication of its responsibility to prove the exception's applicability, the Court should find that its jurisdiction has been established by a preponderance of the evidence, and deny the Government's motion.

**A.**   ***The Government Has Failed to Prove That the SEC's Conduct Did Not Violate Mandatory Duties.***

It is fundamental that:

> the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

*Berkovitz*, 486 U.S. at 536. Here, Plaintiffs allege acts that violate at least one statute and multiple internal SEC regulations or policies—and Plaintiffs have not yet had discovery of what other internal mandates may have been in existence, and violated, during the relevant time. (See Points II.A.2-4 below). Plaintiffs also allege acts that, regardless of the existence of a formal policy, could not have been permissible at any federal agency. (See Point II.A.5 below).

The Government does not specifically address any of Plaintiffs' allegations or evidence that the SEC violated its mandatory duties. It submits no testimony from SEC officials, or anyone else, that the duties in question were actually discretionary. Instead, the Government asserts that the SEC, as a regulatory agency, enjoys blanket immunity for any acts or omissions that occur during the course of its investigations. This proposition is simply wrong, and in the absence of that automatic immunity, the Government is left with no way to satisfy its burden under the first prong of the *Berkovitz* test in the face of Plaintiffs' pleadings and proof.

17

1.      **There Is No Blanket Immunity for the SEC's Failure to Warn of Dangers Revealed in the Course of its Investigations.**

The Government does not make any effort to prove that it has satisfied the first prong of the *Berkovitz* test or address the Plaintiffs' allegations that the SEC's conduct violated statutes, mandatory policies, and was otherwise outside the "permissible range of conduct," and that this misconduct resulted in the SEC's failure to warn Plaintiffs in accordance with its duties to them. Admittedly, it would be difficult for the Government to do so, given the SEC's repeated admission of its own negligence, and of the fact that without that negligence "Madoff's scheme would have been uncovered." (Report p. 138). But the Government's attempt to avoid its obligations under *Berkovitz* by arguing that negligent acts occurring in the course of an SEC investigation are subject to a "bulletproof" grant of blanket immunity under the discretionary-function exception cannot rescue it here. Indeed, the cases the Government cites for this proposition actually show the opposite—that there are no automatic exemptions from the *Berkovitz* analysis for investigative acts.

The Government cites five cases involving the SEC in support of its blanket-immunity argument: *Levy v. United States,* No. 91-15490, 1992 U.S. App. LEXIS 2501 (9th Cir. Feb. 14, 1992); *Standifer v. SEC*, 542 F. Supp.2d 1312 (N.D.Ga. 2008); *Le v. SEC*, 542 F. Supp.2d, 1318 (N.D. Ga. 2008); *Leytman v. NYSE*, No. 95 CV 902, 1995 WL 761843 (E.D.N.Y. Dec. 6 1995); and *SEC v. Better Life Club of Am.*, 995 F. Supp. 167 (D.D.C. 1998), *aff'd*, 203 F.3d 54 (D.C. Cir. 1999).[6] None of these cases supports the argument that negligence in the course of an SEC investigation is *per se* immunized by the discretionary-function exception. Indeed, the

---

[6] The Government also cites *Bd. of Trade v. SEC*, 883 F.2d 525 (7th Cir. 1989) and *Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983), but neither of those cases even involved the FTCA, let alone the discretionary-function exception.

distinctions between those cases and this one preclude the Government's attempt to use them as a shield for the SEC's unauthorized conduct here.

In *Levy*, the plaintiff was an investor in a public company regulated by the SEC.[7]  When the company failed, the plaintiff sued the SEC, alleging that the SEC's negligence caused the plaintiff's losses.  But in a critical distinction, the plaintiff's claim hinged on his allegation that the SEC was negligent *in failing to open an investigation* of the company.  1992 U.S. App. LEXIS 2501 at * 1.  The court held that the SEC had no duty to ensure "that *all* companies offering securities are as they represent themselves to be."  *Id.* at * 2-3 (emphasis added). Instead, the court found "[t]he legislative materials illustrate Congress' intent to protect the SEC's ability *to choose which companies to investigate*." *Id.* at *4-5 (emphasis added).

Here, Plaintiffs are not alleging that the SEC failed to properly exercise a discretionary choice as to whether to initiate an investigation of Madoff.  The SEC exercised that discretion of its own accord at least six times.  Plaintiffs' claim is based on the rule that once the Government exercises its discretion—in this case, by repeatedly electing to investigate Madoff—it must conduct its investigations in compliance with any applicable written requirements and otherwise within a permissible range of action.  The language in *Levy* finding that the SEC had no duty to warrant the safety of "all" *uninvestigated* entities does not foreclose a finding in this case that the SEC, having chosen to investigate a specific company,  cannot grant that company an implied stamp of approval by negligently failing to follow its own mandatory procedures.

The mirror holdings in *Standifer v. SEC* and *Le v. SEC* also provide no support for the SEC's argument of blanket immunity.  In those cases, the courts found that, in addition to fatal

---

[7] *Levy* is an unpublished decision that, even were it not inapposite, cannot be cited in Ninth Circuit courts, and would properly be disregarded by the Court here.  *See Conboy v. AT&T Corp.*, 241 F.3d 242, 255 (2d Cir. 2001) ("because the [Ninth Circuit's] opinion is an unpublished disposition, it is not binding even in the Ninth Circuit, let alone here") (*citing* 9th Cir. R. 36-3(a)).

procedural defects, the plaintiffs' claims that the SEC meddled with their private contracts with a company against which the SEC had filed a separate suit were excluded from coverage under the FTCA. *Standifer*, 542 F. Supp. 2d at 1317 and *Le*, 542 F. Supp. 2d at 1323, *both citing* 28 U.S.C. § 2680(h) (no waiver of sovereign immunity under FTCA for "claim[s] arising out of…interference with contract rights"). After arriving at this conclusion, the courts went on to note the existence of the discretionary-function exception and that it was within the SEC's discretion to chose to investigate and bring complaints for violation of the securities laws. *Standifer*, 542 F. Supp.2d at 1318; *Le*, 542 F. Supp.2d at 1324. These cases provide no analysis whatsoever of allegations of SEC negligence in conducting investigations.

*Leytman v. SEC* and *SEC v. Better Life Club* are similarly far afield and distinguishable from Plaintiffs' claims here. In *Leytman*, the court merely dismissed a claim for damages based on the SEC's alleged failure to investigate the plaintiff's claims of misconduct by the NYSE in withholding records requested under FOIA because the SEC's decision "*whether or not* to investigate" is within the SEC's discretion. 1995 WL 761843, at *3 (emphasis added). Similarly, in *Better Life*, the Court dismissed a claim by the target of a Ponzi scheme investigation because it was within the SEC's discretion whether or not to prosecute the target. 995 F. Supp. at 180. The issue of negligence in the course of the SEC's investigation was not even raised in those cases. In sum, these cases do nothing to undermine Plaintiffs' claims based on negligence in the conduct of investigations that the SEC actually chose to initiate, as opposed to any negligence in making that choice.

The Government tries to erase this critical distinction by pointing to other cases for the proposition that the discretionary-function exception "covers not only the *extent* to which the SEC investigated Madoff [*i.e.*, its choice to do so] but also the *manner* in which it investigated

20

him." (Moving Br. p. 10) (emphasis in original). But the cases it cites do not support a blank check for all acts occurring during an investigation regardless of the circumstances. Rather, they granted immunity where the claims involved investigative acts that were fundamentally tied to a subsequent prosecutorial decision, *and* where there was no showing (and in some cases no allegation) that mandatory procedures were violated.

For example, the Government pulls out of context a quote from *Sloan v. HUD*, 236 F.3d 756, 762 (D.C. Cir. 2001) that "the sifting of evidence, the weighing of its significance, and the myriad other decisions made during investigations plainly involve elements of judgment and choice." (Moving Br. p. 10). Looking deeper, *Sloan* does not support blanket immunity.

First, the court in *Sloan* barred the plaintiff's claim because the source of his alleged injury was HUD's ultimate decision to suspend him from performing contracting work for the agency—an undeniably discretionary choice—and not the investigation itself. *Id.* at 761. Second, the *Sloan* court did not stop its inquiry into the investigation based on the general language the Government quotes about elements of judgment and choice that often come into play during investigations. Instead, the court undertook a fact-specific inquiry into whether the HUD staffers violated any mandatory policies during their investigation, and concluded that they had not. *Id.* at 763-764. Rather than supporting blanket immunity, *Sloan* proves that the Government cannot avoid the fact-specific inquiry dictated by *Berkovitz* just because the alleged negligence took place in the context of a regulatory investigation that resulted in a prosecutorial decision.

The other cases cited by the Government are equally unhelpful to its argument, for the same reasons. In *Gray v. Bell,* 712 F.2d 490, 515-516 (D.C. Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984), the court held that the plaintiff could not proceed with his claim because the alleged

negligence in an underlying FBI investigation was "too intertwined with purely discretionary decisions of the prosecutors to be sufficiently separated from the initial decision to prosecute." Critically, the *Gray* court noted that "[t]here is, indeed, much validity to the distinction between routine execution of discretionary decisions and discretionary decisions themselves." The court stated that an agency's immunity for pre-prosecutorial conduct requires a "case-by-case" analysis as to whether the alleged investigative acts "are sufficiently separable from protected discretionary decisions," and noted specifically that a faulty investigation *could* give rise to liability under different circumstances *Id*. at 515.

The "intertwining" of prosecutorial and investigative choices identified in *Gray,* along with the absence of evidence that an agency's actions were unauthorized, was the basis for the decisions in other cases cited by the Government. For example, in *Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999), *cert. denied*, 528 U.S. 964 (1999), the plaintiff challenged the FDIC's *de facto* liquidation of a bank. The court held that the ultimate choice as to how to dispose of the bank's assets was a discretionary decision, and found that the agency staffer's day-to-day operation of the bank did not violate any mandatory procedures. In *Fisher Bros. Sales, Inc. v. United States*, 46 F.3d 279 (3d Cir. 1995), *cert. denied*, 516 U.S. 806 (1995), the court held that because the damages in question flowed from the FDA Commissioner's decision to embargo Chilean grapes—a discretionary choice— the plaintiffs could not complain that the testing of those grapes had been negligently conducted. In *Wang v. United States*, No. 02-6123, 61 Fed. Appx. 757, 759 (2d Cir. Apr. 2, 2003), the plaintiff sued for wrongful prosecution relating to his alleged participation in an organ-selling conspiracy. The alleged damages flowed solely from the discretionary choice to prosecute, and the plaintiff did not even allege that the federal agents' conduct violated any mandatory statutes or policies. These same two key

distinctions were also present in *Hobdy v. United States*, 762 F. Supp. 1459, 1462 (D. Kan. 1991), *aff'd without op.*, 968 F.2d 20 (10th Cir. 1992), *Bradley v. United States*, 615 F. Supp. 206 (E.D. Pa. 1985), *aff'd sub nom. Pooler v. United States*, 787 F.2d 868 (3d Cir. 1986), and the other cases cited by the Government.[8] Plaintiffs acknowledge that the SEC had discretion under 15 U.S.C. § 78u(a)(1) to decide whether to initiate investigations of Madoff. But once the SEC chose to investigate Madoff, it was without any discretion to negligently violate its own mandatory procedures during the investigations.

The Government concedes that had it investigated in accordance with the applicable statutes and policies, it would have exposed Madoff, and avoided the harm to investors like Plaintiffs. (Complaint ¶¶ 2, 13, 85, 101, 107, 111, 143, 144). In doing so, the Government concedes that it had a non-discretionary duty to warn investors. Indeed, cases involving failure to warn have repeatedly held that an agency's duty to warn of a specific, known danger, as opposed to its determination to investigate, prosecute or take other enforcement action, is not presumptively discretionary, and is not entitled to any grant of blanket immunity.

For example, in *Prescott,* 973 F.2d at 700, the plaintiffs alleged that agents of the Nuclear Regulatory Commission had been negligent in, among other things, not issuing health warnings to residents living near nuclear-test sites. The Government asserted blanket immunity on behalf of the NRC, arguing that anything the agency did in the course of regulating nuclear weapons tests was inherently discretionary. The *Prescott* court specifically rejected the idea that regulatory agencies receive automatic immunity under the discretionary-function exception,

---

[8] *See also Gen. Dynamics Corp. v. United States*, 139 F.3d 1280 (9th Cir. 1998) (improper grand jury indictment of defense contractor for fraudulently overcharging defense department); *Sabow v. United States*, 93 F.3d 1445 (9th Cir. 1996) (army's allegedly negligent classification of serviceman's death as suicide); *Valdez*, 2009 U.S. Dist. LEXIS 66823 at *1-8 (alleged improper arrest DEA and prosecution by DOJ); *Woods*, 2007 U.S. Dist. LEXIS 80931, at *9-11 (decision not to investigate Latin Kings); *Rourke v. United States*, 744 F. Supp. 100 (E.D. Pa. 1988) (alleged negligence in law-enforcement officers' decision to seek arrest warrant).

stating that where the "Government attempts to avoid [a] particularized and fact-specific inquiry" through reliance on a claim of "blanket immunity" for "all acts performed in course of" regulatory activity, the "attempt must necessarily fail." *Id.* *See also Cope v. Scott*, 45 F.3d 445, 451-52 (D.C. Cir. 1995) (failure to post signs warning of dangerous conditions not entitled to immunity); *Duke*, 131 F.3d at 1411 (same); *Boyd v. United States*, 881 F.2d 895, 898 (10th Cir. 1989) (same); *Smith v. United States*, 546 F.2d 872, 876-77 (10th Cir. 1976) (same).[9]

The Government may point to *Redmond v. United States*, 518 F.2d 811 (7th Cir. 1975) as standing for the proposition that federal agents' failure to warn crime victims of a known criminal's propensities is immune from prosecution. But in that case there was no indication that the agents in question had actually decided to conduct investigations of the alleged criminal, and found, or should have found, an impending danger of which they had a duty to warn the plaintiff. *Id.* As this Court held *Peck v. United States*, 470 F. Supp. 1003, 1017 (S.D.N.Y. 1979), a case citing *Redmond*, the key issue is whether the plaintiff "alleged that the federal government *voluntarily took some affirmative action* by which it assumed the duty to warn victims of criminal activity." (emphasis added). Here, Plaintiffs have alleged that affirmative action: the repeated decisions by the SEC to conduct investigations of Madoff.

By failing to disclose what it learned, or should have learned, about Madoff's fraud during those investigations, the SEC violated the duty it took on to warn investors or potential investors in Madoff's Ponzi scheme. As the SEC declares on its website:

---

[9] The particular methods that could have been used to communicate a warning in this case, and the question of their potential efficacy need not be determined on this motion. The Courts in *Cope*, *Duke*, *Boyd*, and *Smith*, above, did not require the plaintiffs in those cases to establish at the jurisdictional stage that any specific warning method should have been used or would have been effective. However, the SEC does have an established mechanism for issuing press releases to the public, which are posted on the agency's website, and which have been repeatedly used to warn the public about dangerous practices and conditions in the financial markets. *See* http://www.sec.gov/news/press.shtml.

> *The mission of the U.S. Securities and Exchange Commission is*
> *to protect investors*, maintain fair, orderly, and efficient markets,
> and facilitate capital formation.

See http://www.sec.gov/about/whatwedo.shtml (accessed February 24, 2010) (emphasis added).

Likewise, the Supreme Court has held that the purpose of the Securities Exchange Act of 1934, which established the SEC, was to "protect investors." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192 (1976).

That the SEC's mission to protect investors imposed a duty on it in this case is made clear by comparison to the Third Circuit's decision in *First State Bank v. United States*, 599 F.2d 558 (3d Cir. 1979), *cert. denied*, 444 U.S. 1013 (1980). In that case, the board of directors of a bank claimed that the FDIC should have warned the board that the agency had discovered during a bank examination that the bank's president was engaged in misconduct. *Id.* at 561. The court held that no duty to warn existed, but *only* because the FDIC's statutory mission was not to protect banks or customers, but rather only the FDIC insurance fund itself. *Id.* at 562-563. Here, the SEC's mandate is not to protect the securities industry, or a government insurance fund, but rather actual investors like Plaintiffs.

This is not a case where the "quality of the investigation" is being "judged by its [prosecutorial] outcome," in the sense described by *Pooler,* 787 F.2d at 871. This is not a case about the target of a prosecution asking the Court to second-guess the prosecutor's discretionary decision to indict or enjoin. The SEC's violation of mandatory policies and consequent failure to warn Plaintiffs of the dangers revealed during its investigations gives rise to liability *regardless* of whatever separate prosecutorial choices the SEC might have made. The SEC has already admitted that but for its own negligence, Madoff's scheme "would have been uncovered" (Report. p. 29, 138)—*i.e.*, exposed to public view through one mechanism or another. Based on the admissions in the Report, it seems beyond dispute that the SEC would have prosecuted

Madoff if its investigations had not been sabotaged by staffers' negligence. But even if the SEC were to somehow now deny that it would have exercised its prosecutorial discretion to do so, there is no need for the Court to rely on an attempt to divine the SEC's prosecutorial intent. Rather, the Court need only take the SEC at its word, that the scheme "would have been uncovered," because the SEC would have complied with its duty to the public by issuing a warning of some kind, even if it had decided, however improbably, not to prosecute.

In short, Plaintiffs have alleged both injuries that were not "intertwined" with any discretionary prosecutorial choice, and conduct that violated mandatory procedures—unlike the plaintiffs in the cases cited by the Government. If anything, the specific analyses in those cases of the overlap between investigation and prosecution and of the existence or absence of mandatory procedures demonstrate definitively that the Government cannot avoid the fact-intensive *Berkovitz* standard by claiming that its negligent failure to warn Plaintiffs is covered by a grant of blanket immunity.

### 2. The SEC Violated the Securities Exchange Act of 1934.

As set forth in the Complaint, the Inspector General's Report concludes that the members of the various SEC teams involved in the Madoff investigations routinely failed to communicate with one another and with relevant self-regulatory organizations, and as a result, failed to expose Madoff's Ponzi scheme. (Complaint ¶¶ 68, 69, 75, 76, 80, 84, 92, 109, 111, 129, 134). This violated 15 USCS § 78q(k), which states:

> (k) Coordination of examining authorities.

> (2) Coordination of examinations. The Commission and the examining authorities *shall* share such information, including reports of examinations, customer complaint information, and other nonpublic regulatory information, as appropriate to foster a coordinated approach to regulatory oversight of brokers and dealers that are subject to examination by more than one examining authority.

(emphasis added).

This Court, among others, has held that where Government employees fail to comply with statutes or regulations employing "shall" or "must" language like that in 15 U.S.C.S. 78q(k), the discretionary-function exception does not apply. *See Scrima v. Hasty*, No. 97 Civ. 8433, 1998 U.S. Dist. LEXIS 15050 (S.D.N.Y. Sept. 23, 1998) (denying motion to dismiss where plaintiff alleged that Bureau of Prisons violated federal regulations); *Ingham v. Eastern Air Lines*, 373 F.2d 227 (2d Cir. 1967), *cert. denied*, 389 U.S. 931 (1967) (failure by air-traffic controller to comply with FAA regulations); *Miles v. Naval Aviation Museum Found., Inc.*, 289 F.3d 715 (11th Cir. 2002) (Government liable where federal regulation stated that agency "must" retain qualified personnel).

The Government does not attempt anywhere in its papers to defend the SEC's failure to communicate within the agency or with self-regulatory organizations, as required by the 1934 Act. It does not even claim, let alone provide evidence to prove, that SEC staffers had the discretion to ignore the mandatory communication directive of that statute. As a result, the Government's motion must be denied, because the preponderance of the evidence shows that the SEC's negligent failures to communicate, which resulted in the failure to expose Madoff's scheme (Complaint ¶¶ 68, 69, 75, 76, 80, 84, 92, 109, 111, 129, 134), were prohibited by law.

### 3. The SEC Violated its Own Mandatory Internal Policies.

The Report also identifies instances in which SEC staffers violated specific internal SEC policies. Specifically, the Report states that when teams investigating Madoff opened and closed their investigations, they did not create reports or consult the SEC's computer system, preventing themselves and subsequent investigators from appreciating the danger Madoff posed. (Complaint ¶ 84, 86, 109, 130, 131). The Report states that this was in violation of internal

policies that made such tasks mandatory. *Id.* This brings the SEC's conduct outside the protection of the discretionary-function exception. *See Downs v. United States*, 522 F.2d 990 (6th Cir. 1975) (FBI agent's negligent decisions in handling hostage situation in violation of agency handbook were non-discretionary); *Roberts v. United States*, 724 F. Supp. 778 (D. Nev. 1989), *aff'd*, 85 F.3d 637 (9th Cir. 1996) (failure to comply with nuclear-regulatory guidelines); *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187 (D.C. Cir. 1986) (failure to comply with internal FBI policies regarding law enforcement on Indian reservations).

Again, the Government makes no effort to address these allegations that the SEC violated its own internal mandates. The Government never claims that the specific internal policies identified in the Report relating to case opening and closing reports and the use of the STARS computer system were actually discretionary notwithstanding the Report's contrary characterization. The Government does not even broadly assert that the filing of these reports and the use of the STARS system were activities within the SEC staffers' discretion, regardless of any written policies. Here, where the burden of proof is on the Government, its silence on these points is dispositive. Plaintiffs' claims based on the violation of mandatory policies, which have been established by a preponderance of the evidence, cannot be dismissed on this motion.

### 4.    The SEC's Conduct Likely Violated Other, Undiscovered Policies.

In addition to conduct described in the Report as violating specifically indentified mandatory policies, the Government also admits conduct that appears very likely to be covered by internal SEC policies that Plaintiffs have not yet had an opportunity to discover. For example, the Government admitted that the SEC staffers routinely disregarded basic auditing principles and practices when it performed its reviews of Madoff's operation, such as failing to request materials from third parties. (Complaint ¶¶ 37, 38, 39, 73, 80, 83, 107, 147). Plaintiffs also allege that several SEC staffers were inexcusably unqualified for their positions. (Complaint

¶¶ 35, 40, 49, 67, 69, 70, 71, 73, 94, 95, 106, 124, 132, 138, 140). Moreover, the Report describes how one staffer ignored a whistleblower out of spite. (Complaint ¶¶ 125, 127, 128). Plaintiffs should be permitted a chance to discover whether this conduct was prohibited by any handbooks, guidelines, policies or procedures governing SEC investigations.

As the D.C. Circuit explained in *Ignatiev*, Plaintiffs are entitled to discover what policies were in effect at the time of the negligent acts, so that they will have a full and fair opportunity to demonstrate that the SEC's actions violated the agency's own mandatory requirements. 238 F.3d at 467; *see also Singh v. S. Asian Soc'y of the George Wash. Univ.*, No. 06-574, 2007 U.S. Dist. LEXIS 37718 (D.D.C. May 24, 2007) (permitting discovery to determine whether policies mandated posting of security personnel); *Gottlieb v. United States*, No. 1-06 cv 1387, 2007 U.S. Dist. LEXIS 27358 (S.D. Ind. April 4, 2007) (discovery of policies relating to federal inmate protection); *Loughlin v. United States*, 286 F. Supp. 2d 1 (D.D.C. 2003), *aff'd*, 393 F.3d 155 (D.C. Cir. 2004) (same, relating to policies governing warnings to public about dangers of chemical-weapons testing).

The Government disputes in its brief that some of the conduct that was covered by SEC policies. For example, the Government claims that "[t]here was no statute, regulation, or mandatory directive that compelled the assignment of a particular investigation to a particular "team" [or] any mandate that the SEC employ investigators with certain qualifications or levels of experience." The Government also claims that "[t]here was no requirement that SEC staffers seek documents or information from sources other than Madoff[.]" But these bare claims in the Government's brief are unsupported by any SEC documents or affidavits from any SEC

representatives with personal knowledge of the SEC's mandatory policies.[10] As such, they have no evidentiary weight, and cannot foreclose Plaintiffs' right to full discovery to determine whether the Government's bare assertions have any basis in fact.

### 5. The SEC's Conduct Was Outside any "Permissible Range of Conduct."

Finally, the Report describes acts and omissions, including those that may have violated policies Plaintiffs have not yet discovered, that cannot in any case be considered to be within the "permissible range of conduct" described by the Second Circuit in *Fazi v. United States*, 935 F.2d 535, 538 (2d Cir. 1991). These acts cannot be protected under the first prong of the *Berkovitz* test, regardless of whether the SEC actually adopted a formal policy saying as much, because they "[could not] appropriately be the product of judgment or choice." *Id.*

For example, the Report states that SEC staffers failed to contact third parties to determine whether Madoff was actually trading. Whether or not the SEC has formally instructed investigators in Ponzi-scheme cases to obtain that information, the Report indicates that SEC staffers themselves considered it mandatory, given one staffers' characterization of the failure to do so as "asinine." (Complaint ¶¶ 83). Similarly, the Report states that SEC staffers repeatedly disregarded their own conclusions that Madoff was lying to them, and admits that there was no basis for the agency to have turned a blind eye. (Complaint ¶¶ 66, 77, 78, 91, 97, 99, 103, 133, 159).

Again, the Government's argument in its brief that "there was no statute, regulation, or mandatory policy that required the SEC to follow one lead over the other, or to investigate one aspect of alleged wrongdoing in addition to others" cannot form the basis of immunity, because

---

[10] The Government's citation of the SEC's discretionary power to seek information, granted by 15 U.S.C. 78u(a)(1), does not preclude the possibility that under certain circumstances it was mandated by internal policy to exercise that discretion in a particular manner.

the Government has provided no evidentiary support for this claim. The Government does not cite any authority holding that, just because these kinds of acts are not specifically prohibited by a written statute or policy, they are automatically within the "permissible range of conduct." Indeed, it may be that the SEC has no written policies requiring its staffers to remain awake while conducting investigations, but that hardly means that it is therefore within the staffers' discretion to literally fall asleep on the job. And the Government's citation to 15 U.S.C. 78u(a)(1), which grants the SEC discretion to initiate investigations, has no bearing on whether the SEC's actual conduct of those investigations was within a "permissible range of conduct" and therefore entitled to immunity.

Instead, the principle that the performance of everyday tasks in the course of undertaking a discretionary project can fall outside the discretionary-function exception is firmly grounded in long-standing precedent. *See Indian Towing Co. v. United States*, 350 U.S. 61 (1955) (failure to maintain lighthouse in working order was non-discretionary, despite discretionary nature of decision to build lighthouse); *Ingham*, 373 F.2d at 238 (failure to operate air-traffic-control system with due care once it had been established); *Yates v. United States*, 497 F.2d 878 (10th Cir. 1974) (same). Once a regulatory task is undertaken, it is not within an agency's discretion to negligently perform it. Accordingly, Plaintiffs' claims based on negligent conduct in the SEC's investigations, conduct that was prohibited as a matter of practice, cannot be dismissed at this stage.

6. **The Government has Failed to Meet its Burden of Proof on the First Prong of the *Berkovitz* Test, and Its Motion to Dismiss Must Therefore Be Denied.**

In sum, the Government has provided none of the admissible evidence necessary to eliminate the disputed facts as to whether statutes, regulations or policies applicable to SEC investigations were violated as a result of the negligent conduct alleged by Plaintiffs.

Accordingly, the Government has failed to satisfy the first prong of the *Berkovitz* test. On this basis alone, the Court should find that its jurisdiction has been established by a preponderance of the evidence, and should deny the Government's motion to dismiss.

**B.      *The Government Has Failed to Prove that the SEC's Negligent Acts and Omissions Were Susceptible to Policy Considerations.***

Even if the Government's failure to meet the first prong of the *Berkovitz* test were not dispositive, the Government has also failed to "prove that each and every one of the alleged acts of negligence…was grounded in social, economic, or political policy" under the second prong of the test. *Prescott, supra*, at 703. It is not sufficient that the SEC's actions involved some kind of choice, because all government action involves such a choice. The choice must have been subject to some kind of competing policy considerations in order to qualify for the discretionary-function exception. *Id.* As alleged in the Complaint, the acts and omissions in question had no such grounding in policy analysis.

**1.      The SEC's Decisions Based on Laziness or Inattentiveness are not Susceptible to Policy Analysis.**

The indifferent conduct of SEC staffers that is evidenced in the Report is of a kind that courts have explicitly stated cannot be protected under the second prong of the *Berkovitz* test. The Report is replete with evidence that SEC staffers failed to perform key tasks or report the dangerous condition represented by Madoff's operation out of sheer laziness or inattentiveness. (Complaint ¶¶ 75, 76, 83). For example, there is no conceivable element of judgment or policy rationale involved in an SEC staffer choosing not to ask the very question that is the purpose of an investigative telephone call (Complaint ¶¶ 144-145), or for an investigative team to not perform the rudimentary tasks listed in its own planning memorandum (Complaint ¶¶ 75-76), or for accepting Madoff's statements at face value despite knowing them to be lies. (Complaint ¶¶ 78, 96-98, 100, 141). These were not failures to make choices that involved judgments for which

there could be competing policy considerations. Rather, they were simply instances in which SEC staffers figuratively "fell asleep on the job" in the course of performing their day-to-day activities.

As a matter of law, these "decisions" were not grounded in policy considerations. As the Second Circuit stated in *Coulthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000), a case involving a federal prisoner being injured by a damaged exercise machine:

> An inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable, are examples of negligence fairly encompassed by the allegations of the complaint that do not involve "considerations of public policy."

The *Coulthurst* court explained that to characterize such decision making as discretionary:

> would effectively shield almost all government negligence from suit, because almost every act involves some modicum of discretion regarding the manner in which one carries it out. Such a result is not required by the language of the DFE and would undercut the policy aims at the heart of the FTCA.

*Id.* at 110. *See also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (reversing dismissal of prisoner's FTCA claim based on allegations that guard failed to make patrols out of laziness or inattentiveness).[11]

The Government has not provided any evidence to demonstrate that the SEC staffers' failures were not the result of laziness or indifference, and were instead the product of choices that were actually connected to policy analysis. Instead, the Government relies on a bare

---

[11] In other cases, courts have recognized that negligence in the performance of day-to-day law-enforcement duties, whether or not driven by indifference, poses separate questions of judgment and policy than actions that are clearly tied to prosecutorial discretion. *See, e.g., Laurence v. United States*, No. 93-0381, 1993 U.S. Dist. LEXIS 21404, *15 (N.D. Cal. July 8, 1993) (denying motion to dismiss where plaintiff alleged failure of government contractors to perform day-to-day duties); *Downs*, 522 F.2d at 997 (no policy considerations at issue in FBI agent's decision to open fire on suspect); *see also Red Lake Band*, 936 F.2d at 1324 (D.C. Cir. 1991) (noting plaintiffs' claim that policy considerations were not at issue in FBI agents' failure to lock doors and take other ordinary safety

assertion that the SEC's decisions all required a policy-based allocation of time and resources. As shown below, this tactic does not excuse the Government's failure to adduce admissible evidence to prove its satisfaction of the second element of the *Berkovitz* test, which is fatal to its motion here.

## 2. The Theoretical Involvement of Time and Resource Constraints Does Not Render All Investigative Decisions Susceptible to Policy Analysis.

The Government's claim that theoretical time-and-resource considerations provide an adequate policy basis for the SEC's negligence under the second prong of the *Berkovitz* test is simply false. The Government fails to address Plaintiff's specific allegations and evidence that the SEC faced no relevant time or resource considerations. Instead, the Government tries to sidestep the demands of the second prong of the *Berkovitz* test by asserting that the "policy" of allocation of agency resources earns the Government a free pass from fact-specific scrutiny. Like the blanket-immunity argument, this argument cannot stand up to the evidence or the law.

First, as revealed in the Report, the investigative teams had more than sufficient time and resources to perform the tasks in question, with the OIG noting that the investigators could not account for long stretches of inactivity. (Complaint ¶¶ 29, 142). In light of these admissions, the Government cannot prevail on its assertion that time and resource considerations had a connection to the SEC staffers' negligent decisions not to do their jobs.

Second, notwithstanding these facts, the invocation of time and resource allocation cannot be allowed to subsume the entire second prong of the *Berkovitz* analysis. In other cases where resource allocation was accepted as a policy consideration, it was only as one of several others. *See Valdez,* 2009 U.S. Dist. LEXIS 66823, at *21 (allocation of resources one of four specifically identified policy considerations); *Mesa v. United States*, 123 F.3d 1435, 1438 (11th

---

precautions while occupying Indian reservation, but declining to rule because issue was raised for the first time on

Cir. 1997) (one of six); *Milligan*, 2009 U.S. Dist. LEXIS, at *40 (one of five). Where, as here, resource allocation is the sole policy consideration advanced by the Government, it should be rejected as insufficient.

As the Ninth Circuit has held, the theoretical involvement of cost considerations, standing alone, cannot confer the protection of the discretionary-function exception to the Government's failure to warn of known dangers:

> [E]very…failure to warn…can be couched in terms of policy choices based on allocation of limited resources. As we have noted before in the discretionary function exception context, "budgetary constraints underlie virtually all governmental activity." ***Were we to view inadequate funding alone as sufficient to garner the protection of the discretionary function exception, we would read the rule too narrowly and the exception too broadly.*** Instead, in order to effectuate Congress's intent to compensate individuals harmed by government negligence, the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly.

*Whisnant v. United States*, 400 F.3d 1177, 1183-1184 (9th Cir. 2005) (citations omitted) (emphasis added); *see also In re Katrina Canal Breaches Consol. Litig.*, 647 F. Supp. 2d 644 (E.D. La. 2009) (rejecting cost considerations as sole policy basis for application of discretionary-function exception).

As a result, the Government cannot cite time and resource allocation to defend, for example, an SEC staffer's decision in this case to refrain from writing to the NASD because he did not want to have to review the material he would receive in reply. (Complaint ¶¶ 75-76). That was not a decision rooted in policy considerations—it was a decision rooted in an individual's desire to avoid an unpleasant task. The Government cannot characterize every decision by SEC staffers to ignore their responsibilities out of indifference as involving a policy choice based on allocation of resources—especially when the only evidence in the record

appeal).

indicates that the staffers in question were under no apparent restrictions of either their time or resouces.

> ### 3. The Government's Failure to Satisfy the Second Prong of the *Berkovitz* Test Independently Requires Denial of the Government's Motion.

In cases where the Government has prevailed on the second prong of the *Berkovitz* test, it has done so by carefully setting out the various, specific policy considerations underlying the conduct at issue, supported by admissible evidence. *See, e.g., Valdez,* 2009 U.S. Dist. LEXIS 66823 at *21 (declarations regarding policy considerations); *Woods,* 2007 U.S. Dist. LEXIS 80931 at *12 (same); *Sloan,* 236 F.3d at 764 (explanation of public-health policy considerations involved in investigative decision making); *Sabow,* 93 F.3d at 1445 (explanation of politically-sensitive policy issues involved in investigation of serviceman's death).

In this case, the Government has made no effort to explain how the lazy and inattentive conduct alleged by Plaintiffs was open to the weighing of competing policy considerations, other than a general reference to the management of the agency's time and resources. That is simply not enough to meet the Government's burden. Accordingly, based on the Government's failure to meet the second prong of the *Berkovitz* analysis, the Court should find that it has jurisdiction over Plaintiffs' claims and deny the Government's motion.

## III. IF DISPUTED FACTS PREVENT THE COURT FROM DETERMINING WHETHER IT HAS SUBJECT-MATTER JURISDICTION, IT MUST STILL DENY THE GOVERNMENT'S MOTION PENDING DISCOVERY AND TRIAL.

The Government has failed to meet its burden under both parts of the *Berkovitz* test, and the Court should therefore make a final determination that the discretionary-function exception does not apply, and deny the Government's motion outright. However, to the extent the Court determines that disputed issues of fact remain as to whether the discretionary-function exception applies, the Government's motion still must be denied, without prejudice, and the issues of fact

must be addressed along with the merits of Plaintiffs' claims only after discovery and trial.  *See, e.g., Laurence,* 1993 U.S. Dist. LEXIS 21404, \*15 (denying motion to dismiss where "[t]he decision of whether the government's negligence arises out of social, economic and political policy decisions or normal day-to-day decisions is a factual dispute" relating to both jurisdiction and the merits).

## CONCLUSION

Congress did not intend for the FTCA to be a mirage.  The Government cannot re-impose the injustice of sovereign immunity on Plaintiffs simply by invoking the discretionary-function exception—especially not when it relies on nothing more than its own bare assertions that its conduct was authorized and related to policy considerations.  The Government has failed to meet its burden of proving, under the *Berkovitz* test, that the discretionary-function exception applies to the conduct alleged in the Complaint.  As a result, the Court should determine that its jurisdiction has been established, and deny the Government's motion to dismiss outright.  Even if the Court were to determine that disputed issues of fact exist as to jurisdiction, the Court should still assume jurisdiction and deny the Government's motion pending discovery and trial.

Dated: New York, New York
      February 26, 2010

**HERRICK, FEINSTEIN LLP**

By:_____/s/_____

      Howard Elisofon
      Christopher J. Sullivan
      John Oleske
      Kerry Jardine
2 Park Avenue
New York, New York 10016
Telephone:    (212) 592-1400
Facsimile:    (212) 592-1500
*Attorneys for Plaintiffs*